UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In Re:                                              Case No. 10-13527-smb

      61 Lex & Park Restaurant, Inc.,
                                                    Chapter 11
                Debtor.
-------------------------------------------------------------X

## DEBTOR'S MODIFICATION OF PLAN

      61 LEX & PARK RESTAURANT, INC. (the "Debtor"), through its attorneys,

Lester & Associates, P.C., pursuant to 11 U.S.C § 1127(b) of the Bankruptcy Code and

Rule 3019-1 of the Local Bankruptcy Rules for the Southern District of New York (the

"Local Rules") hereby modifies its proposed Second Amended Combined Plan of

Reorganization & Disclosure Statement dated February 16, 2011 (the "Plan") filed as

Docket No. 43.

      1.      Paragraph **5.2** of the Plan shall be modified as follows:

      **5.2**      **Helio Gusmao (Secured Claim)**

      The Plan deals with the claim of Helio Gusmao ("Gusmao"), a secured creditor.
Gusmao has a claim (the "Gusmao Claim") in the total amount of $109,701.17.

      -  Gusmao shall receive on account of the Gusmao Claim cash payments
totaling $109,701.17 ***with interest at the rate of 6%*** through ~~120~~ ***84*** monthly
payments of ~~$914.18~~ ***$1,602.58*** commencing on the Effective Date of the Plan.
The Gusmao Claim is impaired to the extent that contractual payments were
$7,453.37 per month and the payments offered are ~~$914.18~~ ***$1,602.58*** per month
~~with no interest~~. The Gusmao Claim is further impaired to the extent that the
original term of the loan was three years (with a maturity date of October 28,
2007) and the offered payments reinstate the loan and extend the term ~~ten~~ ***seven***
years. Gusmao shall retain the lien securing Gusmao's interest in the Debtor's
property and ownership shares.

      2.      Paragraph **5.6, Class 2** of the Plan shall be modified to read as follows:

      **5.6**      **Classes of Claims and Interests**

**Class 2:        Gusmao (Secured Claim)**

**A.        Impairment and Voting.**  Class 2 is impaired by the Plan.  The holder of a Class 2 claim is entitled to vote on the Plan.

**B.        Treatment.**  Unless otherwise agreed by the Debtor and Gusmao, Gusmao will be paid as follows:  Gusmao shall receive on account of the Gusmao Claim cash payments totaling $109,701.17 *__with interest at the rate of 6%__* through ~~120~~ *__84__* monthly payments of ~~$914.18~~ *__$1,602.58__* commencing on the Effective Date of the Plan.  The Gusmao Claim is impaired to the extent that contractual payments were $7,453.37 per month and the payments offered are ~~$914.18~~ *__$1,602.58__* ~~with no interest~~.  The Gusmao Claim is further impaired to the extent that the original term of the loan was three years (with a maturity date of October 28, 2007) and the offered payments reinstate the loan and extend the term ~~ten~~ *__seven__* years.  Gusmao shall retain the lien securing Gusmao's interest in the Debtor's property and ownership shares.

3.        **Section 6** of the Plan shall be modified to read as follows:

**SECTION 6.  MEANS FOR EXECUTION OF PLAN**

The Debtor shall retain the property of the estate.  All Estate Assets shall vest in the bankruptcy estate pursuant to section 541(a) and 1141(b) free and clear of all liens, Claims, and encumbrances, except to the extent of Allowed Claims pursuant to the terms specified in the Plan.

Business operations shall continue during the period post-confirmation.  Debtor shall continue to exist as Reorganized 61 LEX & PARK RESTAURANT, INC. after the Effective Date in accordance with the laws of the State of New York.

The Plan shall be funded from Cash generated from the Debtor's operation of its restaurant business, which is currently generating almost $9,000.00 per month from which to fund the Plan.  Pursuant to Debtor's monthly operating report for October, 2010, Debtor's net profit was $8,899.92.  This net profit exceeds the estimated ~~$7,690.06~~ *__$8,378.46__* per month that is intended to be paid to the Creditors (priority claims, secured claims, secured tax claims, and unsecured claims).

Except as otherwise provided in this Plan, the Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor and its estate shall retain any causes of action and shall retain the powers of a debtor-in-possession post-confirmation.

Reorganized 61 LEX & PARK RESTAURANT, INC., as the successor in interest to the Debtor, may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any claims and causes of action retained pursuant to the above paragraph.

4.      Attached hereto as Exhibit "A" is a copy of the Plan incorporating the above modifications.

5.      These modifications do not further impair the Class 2 claim, an impaired class under the Plan and do not affect other Classes of claims.

6.      Debtor respectfully submits that the above modifications are not in contravention of Sections 1121 though 1129 of the Bankruptcy Code

7.      Further, Debtor respectfully submits that additional disclosure is unwarranted and Section 1125 of the Bankruptcy Code has been satisfied.

Dated: March 28, 2011
       Garden City, New York

LESTER & ASSOCIATES, P.C.
Attorneys for the Debtor and
Debtor-in-Possession

/s/ Peter K. Kamran
By:   Peter K. Kamran, Esq.
      600 Old Country Road, Suite 229
      Garden City, New York 11530
      (516) 357-9191
      pkamran@rlesterlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:                                                                    Case No.: 10-13527-smb

61 LEX & PARK RESTAURANT, INC.

                                                                          Chapter 11

                          Debtor.
-------------------------------------------------------X

## CERTIFICATE OF SERVICE

I, PETER K. KAMRAN, being duly sworn, depose and say:

1.      That I am an attorney duly admitted to practice law in the State of New York, I am not a party to the action, and I am over eighteen years of age and reside in Bellport, New York.

2.      That on the 28th day of March, 2011, I served a true copy of a DEBTOR'S MODIFICATION OF PLAN by depositing a true copy thereof in an official depository of the United States Postal Service contained in a securely closed post-paid envelope directed to the following person by First Class Mail at the address designated below which is the last known address of the addressee and enclosed in an envelope containing name and return address of the party effecting service to:

**RICHARD MORRISSEY, ESQ.**       **STEPHEN NAKAMURA, ESQ.**
**TRIAL ATTORNEY**                **ATTORNEY FOR HELIO GUSMAO**
**OFFICE OF THE U.S.TRUSTEE**     **MERLE, BROWN & NAKAMURA, P.C.**
**33 WHITEHALL ST, 21ST FLOOR**   **90 BROAD STREET, STE 2201**
**NEW YORK, NY 10004**            **NEW YORK, NY 10004**

**61 LEX & PARK RESTAURANT, INC.**
**132 EAST 61ST STREET**
**NEW YORK, NY  10021**

                                        /s/ Peter K. Kamran
                                        PETER K. KAMRAN

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:                                                                          Case No. 10-13527-smb

      61 Lex & Park Restaurant, Inc.,
                                                      Chapter 11

                      Debtor.
------------------------------------------------------------X


### [PROPOSED] SECOND AMENDED DEBTOR'S COMBINED
### PLAN OF REORGANIZATION & DISCLOSURE STATEMENT


**THE DEBTOR IN THIS CASE IS A SMALL BUSINESS. AS A RESULT, THE DEBTOR IS PERMITTED TO DISTRIBUTE AND HAS DISTRIBUTED THIS DISCLOSURE STATEMENT BEFORE ITS FINAL APPROVAL BY THE COURT. IF ANY OBJECTION TO THIS DISCLOSURE STATEMENT IS FILED BY A PARTY IN INTEREST, FINAL APPROVAL OF THIS DISCLOSURE STATEMENT WILL BE CONSIDERED AT OR BEFORE THE HEARING ON CONFIRMATION OF THE PLAN.**

**[PROPOSED] SECOND AMENDED DEBTOR'S COMBINED
PLAN OF REORGANIZATION & DISCLOSURE STATEMENT**

The Debtor, 61 LEX & PARK RESTAURANT, INC., proposes the following Chapter 11 Combined Plan of Reorganization and Disclosure Statement (the "Plan") pursuant to section 1121(a) of title 11 of the United States Code.

All holders of Claims against the Debtor entitled to vote on the Plan are encouraged to read the Plan in its entirety before voting to accept or reject the Plan.

## SECTION 1.  INTRODUCTION

61 LEX & PARK RESTAURANT, INC., the Debtor-in-Possession, (the "Debtor"), submits this Plan, which includes proper disclosure (but not a "disclosure statement") pursuant to Bankruptcy Rule 3017.1 to all known holders of claims or interests in order to disclose adequate information deemed to be material, important and necessary for the creditors to make an informed judgment about the Debtor's Plan.

Accompanying this Plan are copies of the following documents:
1.      Notice Fixing the Date for a Hearing on Confirmation of the Plan.
2.      Ballot for Accepting or Rejecting Plan.

The Bankruptcy Court has scheduled the Hearing on Confirmation of the Plan on April 5, 2011, at 10:00 a.m. at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004 (Hon. Stuart M. Bernstein).

The Debtor recommends that you vote to accept the Plan.  Each creditor, must, however, review this Plan carefully in its entirety and determine whether or not to accept or reject the Plan based upon that creditor's independent judgment and evaluation. Capitalized terms herein have the same meaning as set forth in this Plan; other terms shall have the meaning ascribed to them in the Bankruptcy Code.

The information contained in this Plan has been provided by the Debtor based on its knowledge of the records, business, and affairs of the Debtor.  Except as otherwise expressly indicated, such information has not been subject to audit or independent review.  Although great effort has been made to be accurate, the Debtor, its counsel, and other professional advisors do not warrant the accuracy of the information contained herein.

The Debtor has reviewed the Plan with the United States Trustee's office, which has provided preliminary comments that are incorporated into this Plan.  The United States Trustee reserves her right to object to the Plan and does not waive any objections not raised in her preliminary comments.  The United States Trustee will further review the Plan and the disclosure contained therein and is not, otherwise, responsible for the contents of either document.

The Bankruptcy Court will then make its independent determination that the disclosure contains "adequate information" as defined by Section 1123(a) of the Bankruptcy Code.

COURT APPROVAL OF THE DISCLOSURE CONTAINED IN THIS PLAN DOES NOT CONSTITUTE COURT APPROVAL OR RECOMMENDATION ON THE MERITS OF THE DEBTOR'S PLAN.

No representations concerning the Debtor, including the value of its assets, or the aggregate dollar amount of claims which may be allowed, are authorized other than as set forth in this Plan. Any representations, warranties or agreements made to secure acceptance or rejection of the Plan by creditors of the Debtor which are other than as contained in this Plan should not be relied upon in voting on the Plan.

### SECTION 2. INFORMATION ABOUT THE REORGANIZATION PROCESS

#### 2.1 Voting Procedure

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing, and causing the Ballot Form accompanying this Disclosure Statement to be returned to the following address in the enclosed envelope:

Lester & Associates, P.C.
600 Old Country Road, Suite 229
Garden City, New York 11530

Ballots must be received **on or before 4:00 P.M. on April 1, 2011** to be counted in the voting. Ballots received after this time will not be counted in the voting unless the Bankruptcy Court so orders.

#### 2.2 Ballots

[THE ENCLOSED FORM OF BALLOT IS SUBJECT TO THE APPROVAL OF THE COURT]

Accompanying this Plan are appropriate Ballots for acceptance or rejection of the Plan. Each party in interest entitled to vote on the Plan will receive a Ballot (for each class of claim or interest to which it belongs). Because some parties may be in more than one class for voting purposes, in some instances more than one Ballot has been included with this Plan.

Members of Class 1, 2, 3, 4, and 5 (the "Impaired Classes") are impaired and entitled to vote. Members of Class 6, Equity Interests, will retain their interest in the Debtor. Each member of a voting Class will be asked to vote for acceptance or rejection of the Plan. A party who holds claims in more than one Class should complete a Ballot for each Class with respect to the applicable portion of its claim included in each Class.

### 2.3.    Voting of Claims

Each holder of an Allowed Claim in an impaired Class of Claims shall be entitled to vote to accept or reject the Plan.  For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one entity or any affiliate thereof shall be aggregated and treated as one Allowed Claim in such Class.

### 2.4    The Confirmation Hearing

The Bankruptcy Court has scheduled a hearing of the Plan to commence on April 5, 2011, or as soon thereafter as the parties can be heard.  The Confirmation Hearing will be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004.  At the hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of holders of claims and interests.

### 2.5    Acceptances Necessary To Confirm Plan

At the Confirmation Hearing, the Bankruptcy Court must determine, among other things, whether each impaired Class has accepted the Plan.  Under section 1126 of the Bankruptcy Code, an impaired Class is deemed to have accepted the Plan if at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of Class members who have voted to accept or reject the Plan have voted for acceptance of the Plan.  Further, unless there is acceptance of the Plan by all members of an impaired Class, the Bankruptcy Court must also determine that under the Plan, Class members will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Class members would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

### 2.6.    Confirmation of the Plan Without the Necessary Acceptances

The Plan may be confirmed even if it is not accepted by one or all of the Impaired Classes, if any, if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such Class or Classes.  This provision (the "Absolute Priority Rule") is set forth in section 1129(b) of the Bankruptcy Code and requires that, among other things, the claimants must either receive the full value of their claims or, if they receive less, no Class with junior liquidation priority may receive anything.  In this respect, the Absolute Priority Rule requires payment in full to a senior class of creditors before any payments can be made to junior interests.  There is an exception to the Absolute Priority Rule which is the new value exception (the "New Value Exception").  The holders of equity interests, in order to retain their equity interests while paying unsecured creditors less than 100% of their allowed claims, will be providing new value to the Debtor in the form of cash on an "as needed and if needed" basis in order to fulfill the payments called for in the Plan as well as their management expertise which is unique to the Debtor's business and for which no compensation will be provided.  The Absolute Priority Rule only arises when a court confirms a plan over the objections of a class that the plan

is not fair and equitable. The Debtor may, at its option, choose to rely upon this provision to seek confirmation of the Plan if it is not accepted by the Impaired Classes. However, it should be noted that, creditors, by voting for the Plan will waive their right to assert the violation of the Absolute Priority Rule as an objection to the Plan.

## SECTION 3.        HISTORY OF THE DEBTOR AND POST-PETITION OPERATION

The Debtor was incorporated in the State of New York on or about September 30, 2004. The Debtor is in the restaurant business and operates the restaurant known as Circus. The Debtor is leasing a portion of the real property located at 132 East 61st Street, New York, New York, 10021, where the Debtor conducts its restaurant business. The Debtor's restaurant is a business specializing in fine Brazilian cuisine that is rated by Zagats in its "South American Tops" category. The location of the Debtor's business as well as substantial assets of the Debtor is 132 East 61st Street, New York, New York. This Chapter 11 was required due to certain disputed tax liabilities that closed down the Debtor's business in or about the middle of June 2010.

On July 1, 2010, the Debtor filed its original petition for reorganization of its debts under Chapter 11 of the Bankruptcy Code. Pursuant to the applicable provisions of the Code, the Debtor has remained in possession of its assets as a Debtor-in-possession. An official committee of unsecured creditors has not been appointed.

Pursuant to the Debtor's Chapter 11 petition, as of the Filing Date, the Debtor listed hard assets of $113,000.00 (this amount includes $66,000.00 being held as security for the Debtor's lease of the Debtor's restaurant premises) and total liabilities of approximately $593,768.60, of which $476,990.42 is secured by all of the assets of the Debtor's business, and therefore it is believed that the Debtor has no equity for distribution in a liquidation.

None of the Debtor's property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any entity other than the aforementioned $66,000.00 held as security by the Debtor's landlord.

As of the Filing Date, all stock issued and outstanding is common stock of one class, 100% being held by Paulo Oliveira ("Oliveira"), President. However, as of November 3, 2010, Oliveira transferred all of his ownership interest to his sister, Tania Santana ("Santana"). As President of the Debtor Oliveira was responsible for the day-to-day operations of the Debtor's business, but since the middle of July 2010, Oliveira has not taken an active role in the management of the Debtor's business operations. Santana, as Vice President of the Debtor, and now, President and owner of the Debtor is currently, and has been since the middle of July 2010, managing the business operations of the Debtor. The current management will continue to manage the Debtor as Debtor-In-Possession during the Execution of the Plan. Santana has over 25 years experience in the restaurant industry and is not currently earning a salary. Santana is, however, receiving a benefit from the Debtor in that the Debtor is currently making her car payments of $955.71 per month. Santana uses this car, a Jeep Cherokee, for her bi-weekly trips

to New Jersey to purchase inventory for the Debtor's restaurant business. There are no other officers or directors.

As of October, 2010, the Debtor had 6 employees, and a gross monthly payroll of approximately $29,000.00.

According to the Operating Report filed for October 2010, the Debtor's gross monthly income from its business operations was approximately $75,000.00 and its net monthly income was $8,899.92. (*See* attached hereto as Exhibit "A" Debtor's monthly operating report for the Month of October 2010.)

The Plan shall be funded from Cash generated from the Debtor's operation of its business (i.e. restaurant business).

## SECTION 4. DEFINITIONS AND INTERPRETATIONS

### A. Definition

4.1     "Debtor", shall mean 61 LEX & PARK RESTAURANT, INC.

4.2     "Administrative Expense Claim" means any right to payment constituting a cost or expense of administration of this Chapter 11 case allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor, as debtor-in-possession, during this Chapter 11 case, and (d) any allowances of compensation and reimbursement of expenses to the extent allowed by final order under sections 330 or 503 of the Bankruptcy Code.

4.3     "Administrative Bar Date" means the deadline for filing proofs of Administrative Expenses Claims (including Professional Fee Claims), which shall be_____, 2011, as further set forth in Section 10.2 of this Plan.

4.4     "Allowed" shall mean, with reference any Claim, any claims which have been timely filed, not objected to, or otherwise disallowed by the Bankruptcy Court, and any claims expressly allowed pursuant to this Plan.

4.5     "Bankruptcy Code" means title 11 of the United States Code, as amended from time to time, applicable to this Chapter 11 case.

4.6     "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District, or any other court with jurisdiction over this Chapter 11 case.

4.7     "Cash" means legal tender of the United States of America.

4.8     "Claim" has the meaning set forth in section 101 of the Bankruptcy Code.

4.9    "Class" means any group of Claims classified in Section 2 of the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

4.10    "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

4.11    "Confirmation Hearing" means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

4.12    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan, pursuant to, *inter alia*, section 1129 of the Bankruptcy Code.

4.13    "Creditors" shall mean all persons or entities holding allowed claims for secured debts, unsecured debts, liabilities, undersecured portions of secured debts, demands or contingent or unliquidated or disputed claims of any character whatsoever.

4.14    "Debtor" means 61 LEX & PARK RESTAURANT, INC.

4.15    "Effective Date" means a business day selected by the Debtor on which no stay of the Confirmation Order is in effect.  The Effective Date shall be no earlier than 11 days after the later of the Confirmation Date, or the date any stay of the Confirmation Order is dissolved.

4.16    "Estate Assets" means the property of the bankruptcy estate as that term is defined in section 541 of the Bankruptcy Code.

4.17    "Filing Date" shall mean the date the Chapter 11 petition was filed with the Clerk of the Court, July 1, 2010.

4.18    "Interests" means any holder of an instrument evidencing a present ownership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

4.19    "Plan" shall mean this Chapter 11 Plan in its present form, or as it may be amended or supplemented.

4.20    "Professional Fee Claim" means an Administrative Claim under section 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for compensation of a professional or other entity for services rendered or expenses incurred in this Chapter 11 Case on or prior to the Effective Date.

4.21    "Reorganized 61 LEX & PARK RESTAURANT, INC." means 61 LEX & PARK RESTAURANT, INC., as reorganized pursuant to this Plan on or after the Effective Date.

## B. Interpretation

Unless otherwise specified, all section, schedule, or exhibit references in the Plan are to the respective section in, or schedule or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The hearings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## SECTION 5. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### (A)    Unclassified Claims

**Administrative Expense Claims**

On the Effective Date, except to the extent that a holder of an Allowed Administrative Expense Claim against the Debtor agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Claim, *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as debtor in possession, shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instrument evidencing, or other documents relating to such transactions. The Administrative Expense Claims are estimated in the amount of $15,000.00 for Debtor's attorneys pursuant to 11 U.S.C. 503(b), and $1,915.02 for the New York State Department of Taxation and Finance ("NYSDOTF"). Only after proper application to and obtaining an Order of the Court, this claim will be paid by the Debtor with the approximate $15,000.00 cash on hand of the Debtor. The NYSDOTF administrative claim shall be paid in full on the Effective Date of the Plan from cash generated from the Debtor's business.

**Tax Priority Claims under 11 U.S.C. 507(a)(8)**

The Plan deals with the tax claim of NYSDOTF, a tax creditor. NYSDOTF filed a proof of claim, including a priority claim in the amount of $7,624.74 (the "NYSDOTF Priority Claim").

Pursuant to 11 U.S.C. 1123(a)(1) and 1129(a)(9)(C), the holders of the Tax Priority Claims (including the NYSDOTF Priority Claim) will receive on account of such claims regular installment payments in cash of a total value, as of the Effective Date of the plan, equal to the allowed amount of such claims, over a period of 5 years after the Effective Date, including interest pursuant to I.R.C. 6621(a)(2) as of the calendar month in which the Plan is confirmed. Debtor estimates the amount of its monthly payments to be $137.01 on the NYSDOTF Priority Claim, on the basis of an estimated interest of 3% per annum pursuant to I.R.C. 6621(a)(2).

**(B)**    <u>Classes</u>

### 5.1    132 East Corp. (Secured Claim)

The Plan deals with the claim of 132 East Corp. ("<u>Landlord</u>"), a secured creditor. Landlord has a claim (the "<u>Landlord Claim</u>") in the total amount of $5,514.52.

- Unless paid earlier, Landlord shall receive on account of the Landlord Claim cash payments totaling $5,514.52 through 3 monthly payments of $1,838.17, commencing on the Effective Date of the Plan. The Landlord Claim is impaired to the extent that contractual payments are past due and Landlord will not receive interest on the Landlord Claim.

### 5.2    Helio Gusmao (Secured Claim)

The Plan deals with the claim of Helio Gusmao ("<u>Gusmao</u>"), a secured creditor. Gusmao has a claim (the "<u>Gusmao Claim</u>") in the total amount of $109,701.17.

- Gusmao shall receive on account of the Gusmao Claim cash payments totaling $109,701.17 with interest at the rate of 6% through 84 monthly payments of $1,602.58 commencing on the Effective Date of the Plan. The Gusmao Claim is impaired to the extent that contractual payments were $7,453.37 per month and the payments offered are $1,602.58 per month. The Gusmao Claim is further impaired to the extent that the original term of the loan was three years (with a maturity date of October 28, 2007) and the offered payments reinstate the loan and extend the term seven years. Gusmao shall retain the lien securing Gusmao's interest in the Debtor's property and ownership shares.

### 5.3    Rewards Network Establishment, Inc. (Secured Claim)

The Plan deals with the claim of Rewards Network Establishment, Inc. ("<u>Rewards</u>"), a secured creditor. Rewards has a claim (the "<u>Rewards Claim</u>") in the total amount of $14,441.20.

- Rewards shall receive on account of the Rewards Claim cash payments totaling $13,832.15 through 120 monthly payments of $115.27 without interest, commencing on the Effective Date of the Plan. The Rewards Claim is impaired to the extent that Rewards will not receive interest pursuant to the terms of its agreement with the Debtor. Rewards shall retain the lien securing Rewards' interest in the Debtor's assets.

### 5.4    Tax Secured Claims

The NYSDOTF filed a proof of claim, including a secured claim in the amount of $285,389.64 (the "<u>NYSDOTF Secured Claim</u>");

Pursuant to 1129(a)(9)(D), the holders of the Tax Secured Claims (including the NYSDOTF Secured Claim) will receive on account of such claims regular installment payments in cash of a total value, as of the Effective Date of the plan, equal to the allowed amount of such claims over a period of 6 years after the Effective Date, including interest pursuant to I.R.C. 6621 as of the calendar month in which the Plan is confirmed. Debtor estimates the amount of its monthly payments to be $4,336.12 on the NYSDOTF Secured Claim, on the basis of an estimated interest of 3% per annum pursuant to I.R.C. 6621(a)(2). The NYSDOTF Secured Claim is impaired to the extent that pursuant to 1129(a)(9)(D) NYSDOTF has the right to be paid if full on behalf of the NYSDOTF Secured Claim within 5 years and the Plan provides for payment in full within 6 years.

### 5.5    General Unsecured Claims

The Plan deals with the claim of A&M Bakery ("<u>A&M</u>"), an unsecured creditor. A&M has a claim (the "<u>A&M Claim</u>") in the total amount of $2,419.35.
- A&M shall receive on account of the A&M Claim deferred cash payments totaling $120.97 in 12 monthly payments of $10.08, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Aidil Wines & Liquors ("<u>Aidil</u>"), an unsecured creditor. Aidil has a claim (the "<u>Aidil Claim</u>") in the total amount of $130.00.
- Aidil shall receive on account of the Aidil Claim deferred cash payments totaling $6.50 in 12 monthly payments of $0.54, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Arrow Linen Supplies ("<u>Arrow</u>"), an unsecured creditor. Arrow has a claim (the "<u>Arrow Claim</u>") in the total amount of $2,071.85.
- Arrow shall receive on account of the Arrow Claim deferred cash payments totaling $103.59 in 12 monthly payments of $8.63, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Aunt Butchie's Desserts ("<u>Butchie's</u>"), an unsecured creditor. Butchie's has a claim (the "<u>Butchie's Claim</u>") in the total amount of $1,456.40.
- Butchie's shall receive on account of the Butchie's Claim deferred cash payments totaling $72.82 in 12 monthly payments of $6.07, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Auto Chlor ("<u>Auto Chlor</u>"), an unsecured creditor. Auto Chlor has a claim against the Debtor (the "<u>Auto Chlor Claim</u>") in the amount of $784.01.
- Auto Chlor shall receive on account of the Auto Chlor Claim deferred cash payments totaling $39.20 in 12 monthly payments of $3.27, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Blue Ribbon Fish ("<u>Blue Ribbon</u>"), an unsecured creditor. Blue Ribbon has a claim against the Debtor (the "<u>Blue Ribbon Claim</u>") in the amount of $1,126.73.

- Blue Ribbon shall receive on account of the Blue Ribbon Claim deferred cash payments totaling $56.34 in 12 monthly payments of $4.69, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Coca Cola Enterprises ("Coca Cola"), an unsecured creditor. Coca Cola has a claim against the Debtor (the "Coca Cola Claim") in the amount of $1,446.05.
- Coca Cola shall receive on account of the Coca Cola Claim deferred cash payments totaling $72.30 in 12 monthly payments of $6.03, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Consolidated Edison ("ConEd"), an unsecured creditor. ConEd has a claim against the Debtor (the "ConEd Claim") in the amount of $6,000.00.
- ConEd shall receive on account of the ConEd Claim deferred cash payments totaling $300.00 in 12 monthly payments of $25.00, commencing on the Effective Date of the Plan.

The Plan deals with the claim of DMX Inc. ("DMX"), an unsecured creditor. DMX has a claim against the Debtor (the "DMX Claim") in the amount of $483.92.
- DMX shall receive on account of the DMX Claim deferred cash payments totaling $24.20 in 12 monthly payments of $2.02, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Ecolab Pest Elimination ("Ecolab"), an unsecured creditor. Ecolab has a claim against the Debtor (the "Ecolab Claim") in the amount of $1,894.44.
- Ecolab shall receive on account of the Ecolab Claim deferred cash payments totaling $94.72 in 12 monthly payments of $7.89, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Empire Merchants ("Empire"), an unsecured creditor. Empire has a claim against the Debtor (the "Empire Claim") in the amount of $1,590.71.
- Empire shall receive on account of the Empire Claim deferred cash payments totaling $79.54 in 12 monthly payments of $6.63, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Espresso Emporium ("Espresso"), an unsecured creditor. Espresso has a claim against the Debtor (the "Espresso Claim") in the amount of $416.00.
- Espresso shall receive on account of the Espresso Claim deferred cash payments totaling $20.80 in 12 monthly payments of $1.73, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Farm Fresh ("Farm Fresh"), an unsecured creditor. Farm Fresh has a claim against the Debtor (the "Farm Fresh Claim") in the amount of $2,266.71.
- Farm Fresh shall receive on account of the Farm Fresh Claim deferred cash payments totaling $113.34 in 12 monthly payments of $9.44, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Fireproofing Corp. ("Fireproofing"), an unsecured creditor. Fireproofing has filed a proof of claim against the Debtor (the "Fireproofing Claim") in the amount of $912.37.

- Fireproofing shall receive on account of the Fireproofing Claim deferred cash payments totaling $45.62 in 12 monthly payments of $3.80, commencing on the Effective Date of the Plan.

The Plan deals with the claim of George Karp, Esq. ("Karp"), an unsecured creditor. Karp has a claim against the Debtor (the "Karp Claim") in the amount of $4,432.00.

- Karp shall receive on account of the Karp Claim deferred cash payments totaling $221.60 in 12 monthly payments of $18.47, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Great Sunsan Wine ("Great Sunsan"), an unsecured creditor. Great Sunsan has a claim against the Debtor (the "Great Sunsan Claim") in the amount of $3,120.00.

- Great Sunsan shall receive on account of the Great Sunsan Claim deferred cash payments totaling $156.00 in 12 monthly payments of $13.00, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Isabella Carting ("Isabella"), an unsecured creditor. Isabella has a claim against the Debtor (the "Isabella Claim") in the amount of $2,613.04.

- Isabella shall receive on account of the Isabella Claim deferred cash payments totaling $130.65 in 12 monthly payments of $10.89, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Louis Spagnoli, Inc. ("Spagnoli"), an unsecured creditor. Spagnoli has a claim against the Debtor (the "Spagnoli Claim") in the amount of $12,088.75.

- Spagnoli shall receive on account of the Spagnoli Claim deferred cash payments totaling $604.44 in 12 monthly payments of $50.37, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Manhattan Beer ("Manhattan"), an unsecured creditor. Manhattan has filed a proof of claim against the Debtor (the "Manhattan Claim") in the amount of $351.85.

- Manhattan shall receive on account of the Manhattan Claim deferred cash payments totaling $17.59 in 12 monthly payments of $1.47, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Mario Pippa Imports ("Pippa"), an unsecured creditor. Pippa has a claim against the Debtor (the "Pippa Claim") in the amount of $600.00.

- Pippa shall receive on account of the Pippa Claim deferred cash payments totaling $30.00 in 12 monthly payments of $2.50, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Metropolis Wine ("Metropolis"), an unsecured creditor. Metropolis has a claim against the Debtor (the "Metropolis Claim") in the amount of $2,023.20.

- Metropolis shall receive on account of the Metropolis Claim deferred cash payments totaling $101.16 in 12 monthly payments of $8.43, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Monarch Seafood ("Monarch"), an unsecured creditor. Monarch has filed a proof of claim against the Debtor (the "Monarch Claim") in the amount of $3,135.84.

- Monarch shall receive on account of the Monarch Claim deferred cash payments totaling $156.79 in 12 monthly payments of $13.07, commencing on the Effective Date of the Plan.

The Plan deals with the unsecured claim of the NYSDOTF an unsecured creditor. The NYSDOTF has filed a proof of claim including an unsecured claim (the "NYSDOTF Unsecured Claim") in the amount of $759.75.

- The NYSDOTF shall receive on account of the NYSDOTF Unsecured Claim deferred cash payments totaling $37.98 in 12 monthly payments of $3.17, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Printing for U ("Printing"), an unsecured creditor. Printing has a claim against the Debtor (the "Printing Claim") in the amount of $580.00.

- Printing shall receive on account of the Printing Claim deferred cash payments totaling $29.00 in 12 monthly payments of $2.42, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Purelite Candle ("Purelite"), an unsecured creditor. Purelite has a claim against the Debtor (the "Purelite Claim") in the amount of $280.90.

- Purelite shall receive on account of the Purelite Claim deferred cash payments totaling $14.05 in 12 monthly payments of $1.17, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Sentinel Fire Control ("Sentinel"), an unsecured creditor. Sentinel has a claim against the Debtor (the "Sentinel Claim") in the amount of $1,000.00.

- Sentinel shall receive on account of the Sentinel Claim deferred cash payments totaling $50.00 in 12 monthly payments of $4.17, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Sudek USA Inc. ("Sudek"), an unsecured creditor. Sudek has a claim against the Debtor (the "Sudek Claim") in the amount of $325.05.

- Sudek shall receive on account of the Sudek Claim deferred cash payments totaling $16.25 in 12 monthly payments of $1.35, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Table Tops Paper Corp ("Table Tops"), an unsecured creditor. Table Tops has a claim against the Debtor (the "Table Tops Claim") in the amount of $120.00.

- Table Tops shall receive on account of the Table Tops Claim deferred cash payments totaling $6.00 in 12 monthly payments of $0.50, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Tania Santana ("Santana"), an unsecured creditor. Santana has a claim against the Debtor (the "Santana Claim") in the amount of $26,000.00.
- Santana shall receive on account of the Santana Claim deferred cash payments totaling $1,300.00 in 12 monthly payments of $108.33, commencing on the Effective Date of the Plan.

The Plan deals with the claim of Time Warner Cable ("Time Warner"), an unsecured creditor. Time Warner has a claim against the Debtor (the "Time Warner Claim") in the amount of $506.99.
- Time Warner shall receive on account of the Time Warner Claim deferred cash payments totaling $25.35 in 12 monthly payments of $2.11, commencing on the Effective Date of the Plan.

The Plan deals with the claim of TriVin Imports ("TriVin"), an unsecured creditor. TriVin has a claim against the Debtor (the "TriVin Claim") in the amount of $993.50.
- TriVin shall receive on account of the TriVin Claim deferred cash payments totaling $49.68 in 12 monthly payments of $4.14, commencing on the Effective Date of the Plan.

The Plan deals with the claim of West Conn Meat ("West Conn"), an unsecured creditor. West Conn has a claim against the Debtor (the "West Conn Claim") in the amount of $1,906.11.
- West Conn shall receive on account of the West Conn Claim deferred cash payments totaling $95.31 in 12 monthly payments of $7.94, commencing on the Effective Date of the Plan.

Attached hereto as Exhibit "B" is a chart reflecting the various classes, their claim amounts, and the proposed payments to be made by the Debtor under the Plan.

**5.6     Classes of Claims and Interests**

The following tables (i) designate the classes of Claims against, and Interests in, the Debtor, and (ii) specify which of those classes are (a) impaired or unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or deemed to reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Landlord | impaired | Yes |
| Class 2 | Gusmao | impaired | Yes |
| Class 3 | Rewards | impaired | Yes |
| Class 4 | Tax Secured Claims | impaired | Yes |
| Class 5 | General Unsecured Claims | impaired | Yes |
| Class 6 | Equity Interests | unimpaired | No |

**Class 1:        132 East Corp. (Secured Claim)**

     **A.        Impairment and Voting.**  Class 1 is impaired by the Plan.  The holder of a Class 1 claim is entitled to vote on the Plan.

     **B.        Treatment.**  Landlord will be paid as follows:  Landlord shall be paid in three monthly payments of $1,838.17, commencing on the Effective Date of the Plan.

**Class 2:        Gusmao (Secured Claim)**

     **A.        Impairment and Voting.**  Class 2 is impaired by the Plan.  The holder of a Class 2 claim is entitled to vote on the Plan.

     **B.        Treatment.**  Unless otherwise agreed by the Debtor and Gusmao, Gusmao will be paid as follows:  Gusmao shall receive on account of the Gusmao Claim cash payments totaling $109,701.17 with interest at the rate of 6% through 84 monthly payments of $1,602.58 commencing on the Effective Date of the Plan.  The Gusmao Claim is impaired to the extent that contractual payments were $7,453.37 per month and the payments offered are $1,602.58.  The Gusmao Claim is further impaired to the extent that the original term of the loan was three years (with a maturity date of October 28, 2007) and the offered payments reinstate the loan and extend the term seven years.  Gusmao shall retain the lien securing Gusmao's interest in the Debtor's property and ownership shares.

**Class 3:        Rewards (Secured Claim)**

     **A.        Impairment and Voting.**  Class 3 is impaired by the Plan.  The holder of a Class 3 claim is entitled to vote on the Plan.

     **B.        Treatment.**  Rewards will be paid as follows:  Rewards shall receive on account of the Rewards Claim cash payments totaling $13,832.15 through 120 monthly payments of $115.27 without interest, commencing on the Effective Date of the Plan.  The Rewards Claim is impaired to the extent that Rewards will not receive interest pursuant to the terms of its agreement with the Debtor.

**Class 4:        Secured Tax Claims**

     **A.        Impairment and Voting.**  Class 4 is impaired by the Plan.  The holder of a Class 4 Claim is entitled to vote on the Plan.

     **B.        Treatment.**  The holder of a Class 4 Claim will be paid as follows:  Pursuant to 1129(a)(9)(D), the holders of the Tax Secured Claims (including the NYSDOTF Secured Claim) will receive on account of such claims regular installment payments in cash of a total value, as of the Effective Date of the plan, equal to the allowed amount of such claims over a period of 6 years after the Effective Date, including interest pursuant to I.R.C. 6621 as of the calendar month in which the Plan is confirmed.  Debtor estimates the amount of its monthly payments to be

$4,336.12 on the NYSDOTF Secured Claim, on the basis of an estimated interest of 3% per annum pursuant to I.R.C. 6621(a)(2). The NYSDOTF Secured Claim is impaired to the extent that pursuant to 1129(a)(9)(D) the NYSDOTF has the right to be paid if full on behalf of the NYSDOTF Secured Claim within 5 years and the Plan provides for payment in full within 6 years.

     **Class 5:**     **General Unsecured Claims**

     **A.**     **Impairment and Voting.** Class 5 is impaired by the Plan. The holder of a Class 5 Claim is entitled to vote on the Plan.

     **B.**     **Treatment.** The holders of Class 5 Claims will be paid as follows: Payment of 5% of the allowed amount of the Class 5 Claims in 12 equal monthly payments, commencing on the Effective Date of the Plan.

     **Class 6:**     **Equity Interests**

     **A.**     **Impairment and Voting.** Class 6 is unimpaired by the Plan. The holder of Class 6 is not entitled to vote on the Plan.

     **B.**     **Treatment.** Unless otherwise agreed by the Debtor and its creditors, the holder of Equity Interest shall retain its interest in the Debtor.

## SECTION 6.  MEANS FOR EXECUTION OF PLAN

The Debtor shall retain the property of the estate. All Estate Assets shall vest in the bankruptcy estate pursuant to section 541(a) and 1141(b) free and clear of all liens, Claims, and encumbrances, except to the extent of Allowed Claims pursuant to the terms specified in the Plan.

Business operations shall continue during the period post-confirmation. Debtor shall continue to exist as Reorganized 61 LEX & PARK RESTAURANT, INC. after the Effective Date in accordance with the laws of the State of New York.

The Plan shall be funded from Cash generated from the Debtor's operation of its restaurant business, which is currently generating almost $9,000.00 per month from which to fund the Plan. Pursuant to Debtor's monthly operating report for October, 2010, Debtor's net profit was $8,899.92. This net profit exceeds the estimated $8,378.46 per month that is intended to be paid to the Creditors (priority claims, secured claims, secured tax claims, and unsecured claims).

Except as otherwise provided in this Plan, the Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor and its estate shall retain any causes of action and shall retain the powers of a debtor-in-possession post-confirmation.

Reorganized 61 LEX & PARK RESTAURANT, INC., as the successor in interest to the Debtor, may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any claims and causes of action retained pursuant to the above paragraph.

# SECTION 7.  EXECUTORY CONTRACTS

### 7.1     Unexpired lease to be assumed

Pursuant to Bankruptcy Code section 365(a) and 1123(b)(2) of the Bankruptcy Code, the Lease for the restaurant (unless an Order is entered assuming the lease before the Confirmation Date) by and between the Debtor and 132 East Corp. has been assumed by the Debtor.

### 7.2     Approval of Assumption

In the event an Order assuming the lease between the Debtor and 132 East Corp. is not entered before the Confirmation Date, the entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Bankruptcy Code section 365(a) and 1123(b)(2), of the assumption of the lease for the Debtor's restaurant business in accordance with section 7.1 above.

### 7.3     Cure of Default

Except as may otherwise be agreed to by the parties, any and all undisputed defaults, if any, under any executory contract or unexpired lease assumed by the Debtor pursuant to Section 7 hereof shall be satisfied by cure, in accordance with section  365(b)(1) of the Bankruptcy Code and as provided for in this Plan.  In the event of a dispute regarding (a) the amount of any cure, (b) the ability of the Reorganized 61 LEX & PARK RESTAURANT, INC. to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure required shall be made following the entry of a Final Order resolving the dispute.  All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Reorganized 61 LEX & PARK RESTAURANT, INC. liability with respect thereto, or as may otherwise be agreed to by the parties.

# SECTION 8.  LIQUIDATION AND FINANCIAL ANALYSIS

As a condition to confirmation of the Plan, section 1129(a)(7) of the Bankruptcy Code requires that each impaired class of Claims or interests must receive or retain at least the amount or value it would receive if the estate were liquidated under a chapter 7 scenario on the Effective Date of the Plan.

The primary advantage of the Plan over a chapter 7 liquidation is that holders of Allowed Claims are likely to receive distributions in a higher amount than what would be available in a Chapter 7 case.

Under the Plan, holders of Allowed Class 1, 2, 3, 4, and 5 claims are impaired and entitled to vote. Holders of Allowed Class 6 claims are unimpaired and deemed to have accepted the Plan.

If this case is converted to a Chapter 7 liquidation, creditors (secured and unsecured) will receive no greater distributions. The Debtor listed hard assets of $113,000.00 (this amount includes $66,000.00 being held as security for the Debtor's lease of the Debtor's restaurant premises) and total liabilities of approximately $593,768.60, of which $476,990.42 is secured by all of the assets of the Debtor's business, and therefore it is believed that the Debtor has no equity for distribution in liquidation. Additionally, it is well known that property sold in "distressed sales", i.e. liquidations sales, is normally sold for less than market value, thus with secured claims totaling $476,990.42, it is a virtual impossibility that the general unsecured creditors would receive any distribution from a liquidation sale of the Debtor's assets. Further, it is extremely unlikely that in a Chapter 7 liquidation the secured claims would receive a distribution close to that proposed in the Plan.

In addition, at a minimum, a Chapter 7 Trustee would retain his/her own counsel, who would ordinarily need to devote a substantial amount of time reviewing the status of the Claims and getting up to speed on various matters. Such review would include a substantial amount of time duplicating tasks previously performed by other professionals in the case, thereby increasing both the costs and time necessary to liquidate the Estate Assets. Further, the Chapter 7 Trustee, if it chose to liquidate the assets of the Debtor would normally retain an appraiser and/or an auctioneer thereby incurring additional fees that would further diminish the pool of funds, if any, available to pay general unsecured claims. Also, the statutory fee paid to the Chapter 7 Trustee would further diminish the Estate.

Consequently, the Debtor believes that the Plan's lower total administrative costs and the proposed payments under the Plan combine to result in an equal or higher recovery for Creditors and equity holders, than a Chapter 7 liquidation could offer.

## SECTION 9. JURISDICTION OF THE COURT

The Bankruptcy Court shall retain jurisdiction until this Plan has been substantially consummated, for all appropriate purposes, including, but not limited to the following purposes:

**9.1** The classification of the Claim of any Creditor and re-examination of Claims which have been filed and/or allowed for purposes of voting, and the determination of such objections as may be filed to Creditors' Claims, including a determination as to that portion of secured Claims which are secured and which portions are unsecured. The failure by the Debtor to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine the Claim in whole or in part.

**9.2** Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor or any other

party, including without any limitation to, any right of the Debtor, or the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code.

**9.3**     The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intents of this Plan.

**9.4**     The modification of this Plan after confirmation pursuant to Bankruptcy Rules and Title 11 of the United States Code.

**9.5**     The enforcement and interpretation of the terms and conditions of the Plan.

**9.6**     Entry of any Order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor, and imposition of such limitation, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

**9.7**     Entry of an Order concluding and terminating this case.

## SECTION 10.     MISCELLANEOUS PROVISIONS

**10.1     Payment of Statutory Fees**

In accordance with Section 1129(a)(12) of the Bankruptcy Code, all fees due payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code have been paid by the Debtor.  The Plan further provides that on the Effective Date, and thereafter as may be required through the entry of a Final Decree, the Debtor shall pay in Cash all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

**10.2     Administrative Expenses Claims**

This Plan shall serve as notice of the Administrative Claims Bar Date.  All requests for payment of an Administrative Expenses Claim, other than Administrative Expenses Claims which were not for Professional Fee Claims, must be filed with the Bankruptcy Court and served on counsel for the Debtor no later than the Administrative Claims Bar Date, which date shall be _____, 2011.

Unless the Debtor objects to an Administrative Expenses Claim within ninety (90) days after the Administrative Bar Date, such Administrative Expenses Claim shall be allowed in the amount requested.  In the event that the Debtor objects to an Administrative Expenses Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expenses Claim. Notwithstanding the foregoing, the Debtor or the Reorganized 61 LEX & PARK RESTAURANT, INC. may pay in their discretion, in accordance with the terms and conditions of any agreements relating thereto, any Administrative Expenses Claim as to which no request for payment has been timely filed but which is paid or payable by the Debtor in the ordinary course of business.

### 10.3    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 10.4    Amendments

**(a)    Plan Modifications.**  The Plan may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

**(b)    Other Amendments.**  Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

### 10.5    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 10.6    Severability

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Plan proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The confirmation order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.7    Headings

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

### 10.8    Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of the Bankruptcy Rule 9006 shall apply.

### 10.9    Notices

All notices, requests, demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the cases of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> 61 LEX & PARK RESTAURANT, INC.
> Debtor and Debtor-in-Possession
> 132 East 61st Street
> New York, New York 10021
> Telephone: (212) 223-2965
> Telecopier: (212) 348-8132
>
>      - and -
>
> Lester & Associates, P.C.
> Attorneys for Debtor and Debtor-in-Possession
> 600 Old Country Road, Suite 229
> Garden City, New York 11530
> Telephone: (516) 357-9191
> Telecopier: (516) 357-9281

Dated: Garden City, New York
       March 28, 2011

Respectfully submitted,

/s/ Tania Santana
61 LEX & PARK RESTAURANT, INC.
By: Tania Santana
Title: President

LESTER & ASSOCIATES, P.C.
Attorneys for the Debtor and
Debtor-in-Possession

/s/ Roy J. Lester
By:  Roy J. Lester, Esq.
600 Old Country Road, Suite 229
Garden City, New York 11530
(516) 357-9191

UNITED STATES BANKRUPTCY COURT       Case No. 10-13527-SMB

SOUTHERN DISTRICT OF NEW YORK       Chapter 13

==============================================================

In Re:


## 61 LEX & PARK RESTAURANT, INC.


           Debtor.

==============================================================


## DEBTOR'S MODIFICATION OF PLAN

==============================================================

**LESTER & ASSOCIATES, P.C.**
**Attorney(s) for Debtor**
**600 OLD COUNTRY ROAD**
**SUITE 229**
**GARDEN CITY, NY 11530**
**(516) 357-9191**

==============================================================

To
Attorney(s) for

==============================================================

Service of a copy of the within
                 is hereby
admitted.
Dated,


Attorney(s) for


_____

==============================================================

     Sir: Please take notice

<u>NOTICE OF ENTRY</u>

that the within is a (certified) true copy of a

duly entered in the office of the clerk of the within named court on          20

<u>NOTICE OF SETTLEMENT</u>

that an order
        of which the within is a true copy will be presented for settlement to the HON.
one of the judges of the within named Court, at       on the      day of      20
at         Dated,